Good morning, Your Honors. Kaitlin Ross for Appellate Michael Tierney. Could I reserve two minutes for rebuttal? I wanted to emphasize that my client has stated a claim for deliberate indifference in his complaint, but it was only 21 days, sorry, 18 days after he filed his complaint that the district court dismissed it pursuant to the screening process. I won't go into the detail that's in the brief, but I think the Cervantes case has a very good analysis of why the types of line drawing that the district court performed aren't appropriate at the screening phase. I think that it's too difficult to determine whether or not the degree necessary to determine whether an injury is serious enough. So as an initial matter, I don't think any line drawing is appropriate. But even beyond that, I think on the substantive merits of the claim, my client has clearly alleged the two required elements of deliberate indifference. I would just direct the court- Do you think we have a final appealable order on the merits here? I think we have a final appealable order on the merits because the denial of a in form of papyrus application under 1915 G has been determined to be a final appealable order. I don't have the site immediately at hand, but I can get back to you for that in rebuttal. Let me ask you this. Is there any question that your client had three strikes? No, there's no question that my client had three strikes. Then he had to allege, I guess, a severe or imminent danger of serious physical injury, right? An imminent danger of serious physical injury, correct. Okay. Do you suggest then that that's what he did allege? I do believe that he alleged- Best case for why he alleged that. In his complaint, in the present tense for the day that he filed his complaint, he alleges that he was suffering serious pain as well as infected gums. And the case law, I believe the McGuckin Ninth Circuit case specifically says that serious pain can be considered a serious injury under the Eighth Amendment deliberate indifference analysis. And this is, again, kind of why I think this case was wholly inappropriate to be disposed of under 1915 G, because if Mr. Tierney has alleged serious injury, that's sufficient to state an Eighth Amendment claim on its own. Have we got any case dead on point that would suggest that reading this complaint, he'd alleged enough imminent danger? I believe a Cervantes case. I won't say it's dead on point because it doesn't have- I mean, the bottom line is that's a big, with the three strikes, he's got to come up with something that meets the imminent danger of serious physical injury. And if you don't find it in his complaint, then he's gone, right? I would believe that's true. And all I'm trying to do is get your best case. Well, he's gone, except that unless he can amend. Now, apparently your case is that the complaint is framed right now, states the Eighth Amendment claim, right? Is that right? And I would revise my answer to Judge Smith. He's gone under this 1915 G imminent danger analysis. I think that he's still substantively, as Judge Toshima has just pointed out, on the face of this complaint, stated the Eighth Amendment. Well, so my question is, if you had leave, you think you, I mean the plaintiff, can improve the allegations on the Eighth Amendment claim? I believe he could, Your Honor. I argue that he has submitted, he has stated the claims as it is now, but I certainly think he could improve. And given that he's a pro-predefendant, he should be entitled to leave and a liberal interpretation of his allegations. Are you still interested in pursuing the other claims? It doesn't seem like there's too much there. I worried that my brief was getting a little too long for the court, so I didn't want to spend too much time there. But yes, we are pursuing, preserving those claims there. I believe that those two should be granted leave to amend so we can provide further facts if the court finds that it wasn't enough. Let me get back to an issue I think maybe Judge Friedland might have been alluding to, and that is just, in his order, it's labeled dismissing the action and denying all pending motions. Judge Seabright, the last page, he does two things that concern me. In paragraph one of the conclusion, he says the complaint is dismissed pursuant to 1951G without prejudice, right? Correct. And then in paragraph three, he says the claims are also dismissed for failure to state a claim. A dismissal for failure to state a claim is on the merits. Correct. So my definition has to be with prejudice, so it's hard to tell whether he meant to dismiss it with or without prejudice, isn't it? I agree with that. I think there's a couple of things that are ambiguous about the order. Does it make a difference as to, you know, how we should handle this case, which he did? I think it shouldn't be dismissed without prejudice. If what Judge Seabright meant at paragraph three was dismissed without prejudice, I would argue that that was incorrect because Mr. Tierney should have been granted an opportunity for leave to amend his complaint and add further allegations to support his claims. So without prejudice would mean that he did have the right to amend, right? So you're in a bit of a funny position, as I understand it, because in the district court, you would have wanted to interpret this as having leave to amend, which would have meant without prejudice. But at this point here, I think it's probably better for you if we consider this to be with prejudice so that we can consider the merits and your arguments on the merits. Because if it's without prejudice and this wasn't a final judgment, I don't think we can review the merits. And you're making arguments about the merits of the Eighth Amendment claim. Well, the question about whether it was a final judgment, I think, is also implicated by the fact that he, that Judge Seabright says that the action is dismissed in paragraph one. But then he also states later that in paragraph four in the last sentence, he has my client has the right to file further documents in this action. So I was having a difficult problem trying to figure out whether or not I had an action in the in play at all still in the district court. Well, I think that I think that both have focused you very carefully, because if in fact, he can amend it, then we have no jurisdiction, do we? If you had leave to amend right now, then I would agree that there was no jurisdiction. I just don't find it clearly that he was granted. Isn't that what he said? In which paragraph? In the first part. In paragraph one where without prejudice? Right. Except it says to filing a new case in a new case, right? Does that suggest that it's with prejudice? Well, that's the question. Does he mean a new action there? No, but that's also requires them to pay the filing fee. Correct. And for my client, a dismissal on 1915 G, in effect, is with prejudice because he's in former properous and didn't have the funds to pay the filing fee. It throws him out of court because he doesn't have the filing fee. Essentially, yes. But that only allows you to appeal the IFP issue and not the merits of the Eighth Amendment claim, right? Don't we need a final judgment on both aspects in order to review the merits of the Eighth Amendment claim? My understanding was that with the final judgment of the dismissal under 1915 G would bring the entire action as it was to be able to be appealed as opposed to a piecemeal appeal and requesting supplemental jurisdiction. Do you have a case that supports that? I don't have that with me right now. I hope not. It would be an odd case. I mean, the problem is, you know, this order is ambiguous really to me. I mean, on the one hand, he says it's without prejudice. On the other hand, he seems to say it's, you know, dismissed on the merits, which is with prejudice. You know, you can't do both. In other words, if you dismiss a case without prejudice, you mean the district judge, I don't believe, can go on then to decide the merits, which is what you do when you dismiss for failure to state a claim, right? Correct. It's an odd case is all I'm saying. Or is it in the alternative? Could you... Or is it in the alternative? In the alternative that he would be able to... Well, the first one, he's made his decision, but if not so, in the alternative. That would be the argument that I would present here, just because... I didn't want to... No, they didn't mean it for you. I didn't want to prompt you, but I worry that it may be the alternative. Depending on how the court interprets this ambiguous order, but yes, it would be in the alternative. Okay. Could I ask a question on something else? So Tierney v. Hamada is another case that was filed that I understand had a judgment on the merits. Were the allegations in that case the same as the allegations in this case? Was the dental issue the same dental issue, or was that a different dental issue? I don't have the answer for that right now. I can look into it, but I do not know specifically Tierney v. Hamada. I do understand he had filed several cases, and I made an effort to see if there were any that were related. Were any of them about a different dental issue, as far as you know? Not as far as I know right now. Do you know that some of them were about the same dental issue? I don't know. And is your client in prison in Florida now? What happened was, at some point, he was transferred to Florida, and he was in a... And now, as of a couple months ago, he's out of prison, as recently as I've checked with him. My time is red. Thank you. Your Honors, good morning. My name is Kendall Moser. I'm a Deputy Attorney General with the Department of the Attorney General of the State of Hawaii. Our office became involved with this case when we received an order from this court dated April 26, 2013, requesting that we either enter an appearance as an appellee or as amicus. And our office chose the latter of those two options. So no state entity is or has been a party to this case. We are simply here as amicus to comment, I guess, on Judge Seabright's order, and the brief that we've submitted is in support of his order. I was sitting there just a couple moments ago with my fingers crossed, hoping that the judges would not ask the same procedural questions of me that were asked of Ms. Ross. Looking at the conclusion section of Judge Seabright's order, it is difficult to understand exactly what his intent was because, as the court pointed out, the first paragraph says that it's dismissed without prejudice. Paragraph three of the conclusion says failure to state a claim, which, as Judge Tashima said, is with prejudice. But then in the fourth and final paragraph of the conclusion, it says that a plaintiff shall not be allowed to file anything further in this action other than filing a new complaint accompanied by the full three, et cetera, et cetera. So it's this way and it's that way, and then it's somewhere in between. The day after that order was entered, the clerk's judgment was entered. Is that a hint one way or the other in your view? I suppose it is. I suppose that it's a ruling on the merits. But looking back at the order to which the judgment refers, then I admit that it is a bit confusing. Go ahead. Well, just looking into Judge Seabright's mind, he's a careful judge, but it seems like what he's trying to do is what we call a belt and suspenders job, right, and cover all the bases. But the question is, did he go too far? It's hard to tell what the order means, right, bottom line. I agree with Your Honor. And, of course, our office not having been part of any proceedings, because there were no real proceedings in this case. Right. There was a complaint. It was screened. It was dismissed somehow, one way or another. If we get off the procedural issue, which my colleagues have sufficiently looked about, I guess my biggest problem is it seems to me that he has alleged, based even on McLaughlin, a eminent danger of serious physical injury such that he could get by the three strikes. Wouldn't you agree? I do not, Your Honor. And the reason for that is this. The cleaning of his teeth, Mr. Cherney's teeth, took place in March of 2010. He filed this complaint in June of 2011, 15 months later. It doesn't seem to me that he was under eminent danger of serious physical injury 15 months after the fact. Well, couldn't the gums have gotten infected in the meantime? They could have, yes. The worry that I have is that he's got to come up with extreme and continuing pain. Gum infection is what he alleges. And then I go to McLaughlin. It says allegation of gum infection satisfies the standard. Cervantes relies on that case. And I guess that's the worry that I have in going through the first issue. But then when I get through the first issue, then I go to the second issue. And it seems to me that the second issue, in order to allege deliberate indifference of serious medical needs, one has to allege more than an exercise of medical judgment, which, again, leads me to the toughest question I think for you. Doesn't this say that, in this particular matter, he probably ought to get to amend and suggest, or at least look at, there's some prison policy which might get to the place he wants to go? Well, that's an interesting... I mean, we don't have that in front of us now. But just to dismiss without any opportunity to allege what he could, I don't know if he could. Right. And, Your Honor, I think it's important to keep in mind that this is not a dental malpractice case. The focus, as the Attorney General believes it to be, should be on the prison's response once the filling was knocked out or came out or however it was dislodged. The Eighth Amendment standard, which the Court is well familiar with, is did any defendant purposely ignore or fail to respond to Mr. Tierney's medical need, his dental need in this case? And they didn't. They gave him two options. One, of course, was the free-of-cost tooth extraction, and the other was that he could have restorative dental care, he could have a root canal and a crown place at his own expense. And I do understand there certainly is indication that he is not a man of means, so that second option may not have been much of an option at all. But differentiating this case from some of the other cases from this Court, at least he was given a no-cost option. But if that option, if the tooth extraction option was medically unreasonable or medically unacceptable, then wouldn't he potentially have an Eighth Amendment claim and shouldn't he have the opportunity to amend to say that that was not a medically reasonable option? No, Your Honor. I don't believe so because, again, this is not a negligent standard. It's not a malpractice case. It's an Eighth Amendment case. But so say he has an infected toe and the prison says, let's amputate his entire leg. And he says, no, I don't want my whole leg amputated. I think you should fix my toe. Is the fact that they gave him an option enough to get him out of the Eighth Amendment? Well, that's an interesting hypothetical. But, again, I guess I would just go back to the standard from this Court's decision in McGuckin. Did they purposely ignore or fail to respond to Mr. Tierney's medical need? But he could say that they responded but with something totally unreasonable. And we are not doctors and the district court wasn't a doctor, so it seems like we're not in a position to know whether it was reasonable or not. An Eighth Amendment violation would have occurred in this case if he had, if the feeling had been knocked out, he came to them, you see various writings attached to his complaint, I'm in pain, I need to see a dentist, and nobody did anything. Shut up and go back to your cell. That would clearly be an Eighth Amendment violation. They gave him options. As long as they render some medical treatment, then that's enough?  That's why I said we don't really know what the prison policy is in this situation, do we? We don't. I guess all we can do is speculate, but it seems that it would be. It isn't in the record, is it? There is evidence of what the policy is. Well, there's at least evidence of what happened here. We don't know whether they followed the policy. I agree, and the Court is correct. And what I would add to that is that the health care division administrator, Mr. Munn, did write to him and tell him what his options are. Now, that letter doesn't cite to a policy or anything like that, but at least there is some evidence of what PSD was going to do in this case. Now, the plaintiff here has to meet two objectives to get past where he is now. One is to allege some kind of imminent danger, right? Yes, Your Honor. To get past the Subsection G qualification. And part of that he's got to show on the merits an Eighth Amendment violation. Now, I think you're arguing at this point complaints not sufficient to allege an Eighth Amendment violation. Let me ask you this. Do you see any possibility that he could amend that Eighth Amendment claim to state a deliberate indifference claim? I think. You think that's completely, you know, out of the question? I do, Your Honor, because as I pointed out in the brief, Mr. Tierney is gone. He has, in the lingo of the Department of Public Safety, he has maxed out. He served his full sentence. He's gone. He's not under the physical or legal custody of the Department of Public Safety. He's in Florida, at least as of January 2014, unless he is convicted of some new offense. He's in Florida. Is he in custody in Florida? You don't know? I don't know, Ms. Ross. Well, but he's not in the custody of the State of Hawaii, as far as you know? He is absolutely not in the custody. Is he on parole? No, Your Honor. He served his entire sentence. He has, as they say, maxed out. Well, but he still has, if he has a claim, he can still sue for damages, can't he? He can sue for monetary damages, not in juncture belief, of course. Yeah. But under our Andrews case, all he needs is a damages claim, and he potentially has one. So I'm not sure why the fact that he's maxed out matters to whether there's jurisdiction here, whether we can review this. Well, you're right, Your Honor. And I think going back to the first part of Judge Tashima's question, the facts, this isn't any sort of a continuing tort or a continuing constitutional violation. Whatever happened in 2010-2011 happened. It appears that Mr. Tierney has fully stated what happened, what his efforts were to get some sort of restorative dental care. There are numerous pages attached to his complaint, which isn't typical, numerous exhibits. I think we have as full a record and a full understanding as we can, now that we're here in 2015, as to what happened. So I don't see what additional facts or claims he can bring, other than those that were alleged in the complaint that he filed in 2011, Your Honor. Thank you for your argument. Thank you all very much. We kind of got you to the end of your argument. Did you want to give another 30 seconds' worth, give us the business for 30 seconds? Since we're over here in this lovely place, I'll give you 30 seconds. Really quickly, Judge Freeland, the site for the final appealable order was the Andrews v. King case, and that's related to 1915-G. The question about whether or not the prison had a policy, I think that was exactly the type of thing that my client would be able to find out and discovery, but even in his pleadings, he states at ER 68 that other prisoners were getting their teeth filled and not him. So right there, that's an allegation that there was a policy of allowing it and that the prison was deliberately indifferent to my client's medical needs. Thank you. Case 11-16643 is submitted.
judges: Tashima, Smith, Friedland